Edward F. GREENE,
Plaintiff-Appellant,

v.

Morgan M. FINLEY, Clerk of the Circuit Court of Cook County, Illinois, John E. Goggin, Executive Director of Court Operations, & The Circuit Court of Cook County, Illinois, Defendants-Appellees.

No. 84–1008.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 5, 1984.

Decided Dec. 3, 1984.

Rehearing Denied Jan. 14, 1985.

David M. Mattenson, Kanter & Mattenson, Chicago, Ill., for plaintiff-appellant.

Robert J. Tonos, Asst. State's Atty., Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, WOOD and ESCHBACH, Circuit Judges.

CUMMINGS, Chief Judge.

Plaintiff Edward F. Greene, former employee of the Office of the Clerk of the Circuit Court of Cook County, Illinois, filed this civil rights action against that court, its clerk Morgan M. Finley, and its Executive Director of Operations, John E. Goggin, pursuant to 42 U.S.C. § 1983. The district court granted defendants' motion to dismiss for failure to state a claim upon which relief could be granted and denied plaintiff's motion for reconsideration. On appeal plaintiff claims that he was discharged from his employment without due process of law in violation of the Fifth Amendment of the Constitution. For the reasons set forth below, we affirm.

## I

In determining the propriety of the grant of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, all the allegations in the complaint must be taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404; *National Van Lines v. United States*, 326 F.2d 362 (7th Cir.1964).

Plaintiff Edward F. Greene was convicted under Count III of an August 15, 1980, indictment for conspiracy to violate the Hobbs Act, 18 U.S.C. § 1951. The Hobbs Act provides, *inter alia*, that:

> (a) whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article of commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years or both.

18 U.S.C. § 1951(a).

Greene invoked his Fifth Amendment privilege against self-incrimination at his bench trial before District Judge Bernard Decker. The court acquitted the plaintiff on the first two counts involving a direct violation of the Act and aiding and abetting the direct violation. The court entered its Memorandum Opinion and Order on January 15, 1981. For a detailed discussion of the facts of the case, see *United States v. Mattson*, 671 F.2d 1020 (7th Cir.1982).

On appeal this Court reversed Greene's conviction solely on the ground that the evidence failed to establish the necessary nexus between extortion and interstate commerce required for federal jurisdiction under the Hobbs Act. *Id.* The court consequently did not reach Greene's argu-

ments that his wrongdoing did not constitute conspiracy to commit "extortion" under the Hobbs Act. Greene was suspended from his position with the Office of the Clerk of the Circuit Court of Cook County, Illinois, on August 15, 1980, "pending the outcome of the indictment * * *'" (Exhibit A of R. Item 1). Shortly after the reversal of his conviction Greene sought to return to his job but was told that his job and title had been given to someone else and that therefore he could not resume his job or duties (Br. 1). No specific reasons were given for his dismissal nor was a pre-termination or post-termination hearing held.

On November 16, 1982, Greene filed this lawsuit under 42 U.S.C. § 1983 alleging deprivation of procedural and substantive due process rights arising from property and liberty entitlements. He requested relief in the form of damages and reinstatement to his employment with backpay. (Complaint, ¶¶ 14, 18 of R. Item 1.)

The district court in its October 5, 1983, Memorandum Opinion and Order dismissed plaintiff's complaint on the basis that Greene's criminal trial provided him with all the due process safeguards and opportunity to be heard to which he was entitled. The defendants, in the lower court's view, were completely justified in "relying upon the results" of the trial court proceedings which convicted Greene and in refusing him a post-termination hearing because his conduct established during the criminal proceedings provided "compelling reasons" for his suspension and discharge. Judge Moran noted that the appellate reversal was solely based on jurisdictional grounds and that the virtually undisputed facts of

the case "disclose that Greene was directly involved in extorti[on]" (p. 2 of the lower court's opinion).

## II

Plaintiff's action falls into a familiar category of cases that involve an alleged unconstitutional denial of due process flowing from a loss of government employment or a government benefit. The initial inquiry in such cases is ordinarily whether the plaintiff's interest "rises to the level of a constitutionally protected 'liberty' or 'property' interest." *Larry v. Lawler,* 605 F.2d 954, 957 (7th Cir.1978). The district court, however, only briefly and tangentially considered the constitutional status of plaintiff's property and liberty interests. Consequently, it would be inappropriate for us to review this issue on appeal in that the district court's early dismissal of the case pursuant to Fed.R.Civ.P. 12(b)(6) precluded a close scrutiny of the question and development of a record below.[1]

■ Instead, our inquiry is limited to review of the district court's conclusion that even assuming Greene possessed a protected property or liberty interest, he is not constitutionally entitled to receive a termination hearing from defendants based on the allegations in his complaint. This case is unlike the situation where an employee has been discharged without receiving an opportunity to contest the basis of his release. Plaintiff has benefited from substantial procedural safeguards and an extended opportunity to be heard during his criminal trial. Since the sole basis for his discharge was his conviction, he has

---

1. With regard to plaintiff's alleged property interest in his employment, the district court noted that plaintiff conceded he was not covered by the full panoply of civil service procedures for dismissal and had not specified what rules and regulations of the Cook County Board of Commissioners entitled him to a hearing. To the extent plaintiff possessed any constitutionally recognizable interest at all, the court speculated that there might exist a liberty entitlement as opposed to a property entitlement, since plaintiff's "suspension and discharge were for reasons reflecting upon his honesty and integrity * * *" (p. 2 of district court's opinion). *Greene*

*v. McGuire,* 683 F.2d 32, 35 (2d Cir.1982), however, would appear to rule out even a liberty interest on the facts before us. In *Greene* plaintiff policemen were dismissed solely because of their convictions for bribery and conspiracy and the convictions, as here, were subsequently overturned on appeal. According to the Second Circuit, defendant's decision not to rehire plaintiff policemen caused no deprivation of "liberty" because any stigma to their reputation resulted from their convictions and not from defendant's denial of reinstatement which did not disclose the reasons for their discharge.

already received more "process" than what he claims he is entitled to receive at a hearing before defendants considering precisely the same issues as those litigated at trial. As this Court explained in *Larry v. Lawler*, "what procedures due process may require under any given set of circumstances" varies with a "determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action." 605 F.2d at 959 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230); see also *Mathews v. Eldridge*, 424 U.S. 319, 334–335, 96 S.Ct. 893, 902–903, 47 L.Ed.2d 18. Defendants correctly point out that the criminal trial with its stringent procedural safeguards and difficult burden of proof afforded plaintiff more "process" than he ever could have expected to receive at an administrative hearing before defendants under the *McElroy* and *Mathews* standard.

But plaintiff contends that receipt of "due process" in the context of a criminal trial should be completely irrelevant to a determination of the amount of process due in the case of termination of employment. He argues that a criminal trial presents risks that are "significantly greater than those presented in an administrative hearing" and further, that consideration of the process afforded him at criminal trial[2] would impinge on his Fifth Amendment right against self-incrimination (Br. 21). But the rule set forth in *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 and its progeny, has already settled this issue and consequently the district court's dismissal of this case was entirely proper.

The significance of *Codd* in this context was articulately set forth by Judge Wood of this Court in *Barbian v. Panagis*, 694 F.2d 476 (7th Cir.1982):

> While under the Due Process Clause at least "*some* form of hearing" is required

before the owner is finally deprived of a protected property [or liberty] interest [citations omitted] (emphasis in original), that hearing only need take a form "appropriate to the nature of the case * * *." [citations omitted] Thus, the [Supreme] Court held in *Codd v. Velger* that a grievant need not be provided any opportunity to present evidence to support his arguments, when the essential facts surrounding the dispute had been previously resolved. In *Codd*, the plaintiff, a policeman discharged from the New York City police force, did not dispute the facts underlying his termination. The plaintiff complained only that the city had provided him no formal hearing before deciding to discharge him. The Court ruled * * * "if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the [issue to be resolved]" [parentheses in original].

*Id.* at 488 (quoting *Codd*, 429 U.S. at 627, 97 S.Ct. at 884).

*Barbian* ruled that plaintiffs were not entitled under the Fourteenth Amendment to a hearing regarding the Milwaukee Commissioner of the Department of Health's decision to grant a trucking company a permanent variance from the municipal noise ordinance. The Court explained that the "facts underlying the Department's decision had been extensively litigated and conclusively resolved at trial in the plaintiff's state court challenge on the Common Council rezoning decision." 694 F.2d at 488. Since the plaintiffs did not "contend that, given the opportunity they could have presented new or additional evidence to dispute those findings," the Due Process Clause did not "require that plaintiffs be permitted to repeat the presentation of evidence which was previously fully litigated at trial by the parties." *Id.*[3]

---

**2.** This Court has previously held that determinations reached in a civil proceeding may be relied upon by government officials in denying government benefits and that such determinations provide the defendant with sufficient pro-

cess as to eliminate the need for a second hearing. See *Simmons v. Drew*, 716 F.2d 1160, 1163 (7th Cir.1983).

**3.** *Codd* itself dealt with a plaintiff's failure to allege a dispute regarding a deprivation of liber-

The Supreme Court's *Codd* rule also has been applied where the underlying events motivating discharge of the employee were litigated in a criminal proceeding. This Court agrees with the Second and Fifth Circuits' application of *Codd* in this context. In *Smith v. Lehman,* 689 F.2d 342, 346 (2nd Cir.1982), certiorari denied, 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1018, the Second Circuit, relying on *Codd,* ruled that the Navy was not required to grant a hearing to plaintiff, a special agent of the Naval Investigative Service, where plaintiff had failed to disclose to the Navy a disorderly conduct conviction which was based on his own guilty plea. Because the Navy's discharge of plaintiff was based solely on the falsehood of plaintiff's statements denying the conviction and because the falsehood was "uncontrovertibly established by the public record of his [prior criminal] conviction," the Court held that plaintiff could not "challenge the 'substantial accuracy' of the Navy's charges against him as he is required to do." *Id.* The Court recognized that it was pointless to allow the plaintiff to deny the substance of facts adduced at a prior criminal proceeding and that the Fifth Amendment did not require such an exercise in futility.

In *McElwee v. Todd,* 581 F.2d 1182, 1184 (5th Cir.1978), it was held that plaintiff fireman was not entitled to a termination hearing because a "hearing could not have expunged * * * the central reason for his dismissal, his possession of marijuana." This possession was "uncontroverted" because of plaintiff's admission at his criminal trial that he had in fact sold marijuana to a policeman. Despite the fact that plaintiff was acquitted by the trial court on an entrapment defense, the facts established at the proceeding rendered any further hearing useless and unnecessary in light of *Codd.*

In both *Smith* and *McElwee* it was not a criminal conviction, but rather, the undisputed facts adduced at a criminal proceeding which rendered a further hearing useless. Thus it is not relevant to the inquiry under *Codd* that a particular conviction, which establishes certain facts that later cause a person's discharge from employment, is subsequently overturned or that, as in *McElwee,* the conviction is never obtained. Plaintiff's arguments that a conviction obtained without jurisdiction, as was the plaintiff's, is void and without force and effect,[4] and that Illinois law prohibits the use of evidence of a criminal conviction in a civil proceeding[5] are undeniably true, but, they are also inapposite to this case.

This Court in reviewing Greene's conviction noted that "[t]he relevant facts unfolded at trial virtually without dispute or contradiction." *Mattson,* 671 F.2d at 1021. Contrary to plaintiff's claim that he was "cleared and judged innocent" on appeal (Br. 14), the opinion reversing the conviction limited its discussion to whether the extortion in question affected interstate commerce. As stated by the district court, the detailed statement of virtually uncontroverted facts discloses that Greene was directly involved in extorting money from an electrician in return for using his presumed influence to obtain a supervisor's license for the electrician (App. A–16). Plaintiff Greene conceded the truth of these facts in his brief on appeal in *Mattson, supra* (Br. 6–7), and argued that his actions did not violate the Hobbs Act, but instead amounted to "a classic example of a voluntary payment of a bribe punishable only under state law" (Br. 22). Irrespective of whether these facts could support a conviction of extortion or conspiracy to commit extortion under state or federal law, they provide, in the district court's

ty. We agree, however, with this Court's determination in *Barbian* that the logic of the *Codd* rule extends to cases involving deprivations of property.

4. See *Bauman v. United States,* 156 F.2d 534 (5th Cir.1946).

5. See *People ex rel. Grogan v. Lisinski,* 113 Ill. App.3d 276, 68 Ill.Dec. 854, 446 N.E.2d 1251 (1st Dist.1983); *Abraham Lincoln Memorial Hospital v. Gordon,* 111 Ill.App.2d 179, 249 N.E.2d 311 (4th Dist.1969).

words, "compelling reasons" for plaintiff's dismissal (*id.*). This would be a different case if these facts revealed activity which was completely unrelated to plaintiff's qualifications for his job, see *Kindem v. City of Alameda,* 502 F.Supp. 1108, 1113–1114 (N.D.Cal.1980), but instead, his conduct reflects upon his honesty and integrity and indicates that he is unfit for employment in the public service.

In light of the failure of plaintiff's complaint to allege that plaintiff could have presented new or additional evidence to dispute these findings of fact, we hold that the principle of *Codd* requires dismissal of this case. Ordering defendants to grant plaintiff a hearing so that plaintiff could present the same evidence that was litigated at trial would serve no useful purpose and does not in our view constitute process to which the plaintiff is entitled.

Finally, we consider plaintiff's claim that allowing defendants to rely upon evidence established at plaintiff's criminal trial in their decision to dismiss, without granting plaintiff an opportunity to be heard, could impermissibly infringe on his Fifth Amendment right against self-incrimination. He alleges that denial of a termination hearing in the present circumstances would force him to choose between asserting his Fifth Amendment right or risking loss of his job.

Preliminarily, we note that there is no evidence in the present case that the exercise of plaintiff's Fifth Amendment right was "chilled" in any manner. He asserted the privilege fully at trial (Br. 15). Further, to the extent our decision today might place other future criminal defendants in the "bind" that plaintiff describes, we doubt that plaintiff has standing to assert their rights. See *County Court of Ulster v. Allen,* 442 U.S. 140, 154–163, 99 S.Ct. 2213, 2223–2227, 60 L.Ed.2d 777; *Warth v. Seldin,* 422 U.S. 490, 499, 509, 95 S.Ct. 2197, 2205–2210, 45 L.Ed.2d 343. 13 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION 2d § 3531.9 (1984).

■ As to the merits of plaintiff's argument, we do not view our decision as impinging on the Fifth Amendment right against self-incrimination in any way. Because avoiding criminal conviction in the first instance would seem to be the most effective manner of preserving one's job, it is questionable whether the unavailability of a termination hearing would in fact affect a criminal defendant's decision to invoke the Fifth Amendment. But the constitutional privilege against self-incrimination does not grant a strategic option, but, rather, an absolute right. In other words, the privilege might be invoked where it is contrary to the defendant's immediate self-interest for various rational or irrational reasons. For example, we can envision situations where a criminal defendant might choose not to testify or offer an alibi or exculpatory evidence at trial even though he or she is innocent, *i.e.,* in order to protect loved ones whom the defendant knows to be guilty.

In the above situation, or where a defendant chooses to invoke the Fifth Amendment privilege for whatever reason, our holding today allows a defendant to allege his unrevealed exculpatory alibi or evidence to the relevant government employer, and if unsuccessful, to a court. In this manner the decision to assert the Fifth Amendment privilege is not clouded by a fear that meritorious explanations or justifications of a defendant's conduct, which could save his or her job, will be lost if not presented at trial. Where a criminal defendant has no such meritorious explanation or justification, we fail to see how the decision to invoke the Fifth Amendment will be affected by an inability to offer that unmeritorious excuse or an unexplained denial at a later date.

The district court's order granting defendants' motion to dismiss is affirmed.