Fred P. PHOTOS, Plaintiff,

v.

**TOWNSHIP HIGH SCHOOL DISTRICT NO. 211, Richard C. Kolze, Robert Rozycki, and Robert Wright, Defendants.**

No. 85 C 7971.

United States District Court,
N.D. Illinois, E.D.

July 8, 1986.

## MEMORANDUM OPINION
## AND ORDER

WILLIAM T. HART, District Judge.

Plaintiff Fred Photos filed this complaint against defendants Township High School District No. 211 ("Township"), Richard Kolze (Township's Superintendent), Robert Rozycki (principal of the school where plaintiff worked), and Robert Wright (director of plaintiff's department) alleging discrimination in employment in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution (42 U.S.C. § 1983 is the jurisdictional basis) and Title VII (42 U.S.C. § 2000e–2), and a conspiracy to deprive plaintiff of equal protection in violation of 42 U.S.C. § 1985(3). Plaintiff claims he was demoted in March 1983, denied four promotions in September 1983 and March 1, 1984, denied a two week leave of absence and a two week vacation on July 28, 1984, suffered ("[a]t all times relevant hereto") verbal insults to his Greek ancestry, and finally was fired on August 1, 1984. Presently before the court is Township's motion to dismiss the claims brought under §§ 1983 and 1985.

## I. EQUAL PROTECTION

In its supporting brief Township admirably concedes that *Alexander v. Chicago Park District*, 773 F.2d 850, 856 (7th Cir. 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986), disposes of the argument in their motion that Title VII is the sole remedy for employment discrimination and thus preempts equal protection claims based on the same facts. Therefore the equal protection claim under the Fourteenth Amendment survives.

## II. DUE PROCESS

### A. Property

The method for analyzing a claim that the state took away property without due process is well-established. First, the court must look to state law to determine whether what the plaintiff claims was taken or denied amounts to property. Proper-

Robert G. Peterson, Robert G. Peterson & Associates, Chicago, Ill., for plaintiff.

John M. Collins, Jr., John H. Hager, John H. Hager, P.C., Chicago, Ill., for defendants.

ty in the due process sense "is an individual entitlement grounded in state law, which cannot be removed except 'for cause'." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 431, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982). If the plaintiff is found to have a property interest, the second step is to determine what process is due. This is done by weighing the competing interests of the plaintiff and the state, and considering the likelihood of error of both the procedures actually used and the procedures the plaintiff claims should have been used. *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

■ In this case, Township argues plaintiff's claim fails at the first step because no property or liberty interest has been identified. A property interest in employment must be grounded on "rules or mutually explicit understandings." *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1263 (7th Cir.1985) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972)). Plaintiff points to the guidelines referred to in paragraph 14 of the complaint as evidencing his property interest. There are two problems with that response. First, the complaint (paragraph 14) reads as if the guidelines concern only promotions, so at most plaintiff has alleged a property interest in the positions to which plaintiff sought promotion. Plaintiff states in his brief that the guidelines have a broader scope, but "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Second and more important, plaintiff has negated the possibility (and it is only a possibility: see *Patkus* at 1263–64) that the guidelines could constitute a contract by alleging the

defendants had a policy and custom of *not* following their own guidelines. Taking that allegation as true, plaintiff can have had no legitimate expectation (much less a mutual understanding) that defendants would follow the guidelines. As it stands, then, plaintiff has alleged facts which preclude finding a property interest. *Cf. American Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 724 (7th Cir.1986) ("A plaintiff ... may plead himself out of court by including factual allegations which if true show that his legal rights were not invaded"). The due process claim is therefore dismissed.

■ Township also argues that, independently of the above analysis, plaintiff's claim based on the alleged denial of vacation time and a leave of absence must fail because those things are not important enough to be property in the constitutional sense. However, it has long been the rule that "as long as a property deprivation is not *de minimus*, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause." *Muscare v. Quinn*, 520 F.2d 1212, 1215 (7th Cir. 1975)), *cert. denied*, 425 U.S. 560, 96 S.Ct. 1752, 48 L.Ed.2d 165 (1976).[1] *See also Campbell v. Miller*, 787 F.2d 217, 222–23 (7th Cir.1986) (in determining existence of property interest court does "not look to the weight or importance of that benefit to the individual, but rather to the manner in which it was conferred").

Defendants rely heavily on *Brown v. Brienen*, 722 F.2d 360, 365 (7th Cir.1983), in which the court doubted whether a claim that compensatory time off had been delayed rather than given when due could ever rise to the level of property worthy of due process protection.[2] However, that part of *Brown* was clearly dicta, as the

---

1. One court has taken *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 520 (1981), as casting doubt on the continued validity of the *de minimus* rule. *See Barnier v. Szentmiklosi*, 565 F.Supp. 869, 876 n. 14 (E.D.Mich.1983).

2. One district court has read the dicta in *Brown* very broadly as meaning that "personnel actions

of a magnitude less than termination does not rise to a level worthy of consideration under the due process provisions of the Constitution of the United States." *Warfield v. Adams*, 582 F.Supp. 111, 114 (S.D.Ind.1984); *see also Wargat v. Long*, 590 F.Supp. 1213, 1215 (D.Conn.1984) (following *Warfield*).

court itself made clear (*id.* at 365) and as later cites to *Brown* show. *See, e.g., Philly's v. Byrne,* 732 F.2d 87, 90 (7th Cir. 1984); *Parrett v. City of Connersville,* 737 F.2d 690, 693 (7th Cir.1984), *cert. denied,* 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985). Moreover, the Seventh Circuit has not followed the suggestion of *Brown* that some adverse employment decisions should be held not property; instead, it has continued to evaluate the importance of the plaintiff's interest as do other courts—in determining what process is due. *See, e.g., Altman v. Hurst,* 734 F.2d 1240, 1242 (7th Cir.) (postponement of vacation time), *cert. denied,* — U.S. —, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984); *see also Petersen v. Board,* 623 F.Supp. 235 (N.D.Ill.1985) (3-day suspension from work).[3] Finally, even were this court to consider whether plaintiff's interest in vacation time and a leave of absence is too trivial to constitute property, the required assessment cannot be done solely on the basis of the complaint.

The Seventh Circuit has defined property for the purposes of due process analysis as

an entitlement that stands or falls on the application of rules to facts. To the extent a request appeals to discretion rather than to rules, there is no property. [Citations omitted.] '[V]iewed functionally, property is what is securely and durably yours under ... law, as distinct from what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain.'

*Scott v. Village of Kewaskum,* 786 F.2d 338, 339–40 (7th Cir.1986) (quoting *Reed v. Village of Shorewood,* 704 F.2d 943, 948

(7th Cir.1983)). At this point, given that the allegations of the complaint must be taken as true and construed most favorably to plaintiff, *Doe v. St. Joseph's Hospital,* 788 F.2d 411, 414 (7th Cir.1986), this court cannot say that plaintiff did not have a secure and durable right to the vacation time and leave of absence he was allegedly denied. Therefore, plaintiff has adequately alleged a property interest. Whether a property interest will be proved is, of course, another question.

**B. Liberty**

 Plaintiff argues a liberty interest is implicated here because defendants demoted him without any explanation and then refused to promote him in violation of their guidelines. "[A] liberty interest is implicated when either (1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, communism or subversive acts; or (2) the state imposes a stigma or other disability which forecloses other opportunities." *Munson v. Friske,* 754 F.2d 683, 693 (7th Cir.1985). Plaintiff's allegations do not even come close to that standard. It is difficult to imagine any circumstances where the *lack* of an explanation for an employment decision could impugn a person's good name or impose a stigma, and plaintiff has certainly not alleged any such circumstances here. The same is true of the failure to promote in accordance with the guidelines. Therefore, no claim is stated for the deprivation of liberty without due process.[4]

**3.** Some courts have also expressed "reason to doubt whether the Fourteenth Amendment was intended to allow every person with a breach of contract claim against a state to bring that claim in federal court." *Green v. Board of School Commissioners,* 716 F.2d 1191, 1192 (7th Cir. 1983). However, the only "limiting principle consistent with Supreme Court precedent" (*Grossart v. Dinaso,* 758 F.2d 1221, 1236 (7th Cir.1985) (Posner, J., dissenting)) available to perform this gate-keeping function is the *de minimis* rule and, as discussed in the text, that rule does not defeat plaintiff's claim, at least at this stage. Moreover, as already noted, the importance of the property right is evaluated in deciding what process is due, and that second

step appears fully capable of preventing the elevation of every petty employment dispute by state employees into a constitutional claim. *See, e.g., Brown,* 722 F.2d at 365 (noting that the importance of the plaintiff's interest is considered in determining what process is due and so considering it); *Ellis v. Hamilton,* 669 F.2d 510, 514 (7th Cir.), *cert. denied,* 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).

**4.** In his brief plaintiff claims that his "subsequent employer received a negative reference regarding the plaintiff's supervisory capacity from the defendants" (brief at 4). Even were that allegation properly before the court, it would not help plaintiff. Negative comments

## C. Timeliness

■ Township argues that any claim based on the 1983 demotion is barred because it happened more than two years before the complaint was filed. In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Court held that § 1983 actions should be characterized as personal injury actions for purposes of choosing (since Congress did not) the appropriate limitations period. In Illinois, that statute is two years. Ill.Rev.Stat. ch. 110, ¶ 13–202 (1985). In a case decided after Township filed its briefs, however, the Seventh Circuit ruled that "in Illinois, a plaintiff whose section 1983 cause of action accrued before the *Wilson* decision, April 17, 1985, must file suit within the shorter period of either five years from the date his action accrued or two years after *Wilson*." *Anton v. Lehpamer*, 787 F.2d 1141, 1146 (7th Cir.1986). Plaintiff filed this case on September 13, 1985, which is less than five years after his cause of action accrued in 1983 and well within two years after *Wilson*. Therefore, his claim based on the 1983 demotion is timely.

## III. SECTION 1985(3)

■ The first of Township's two arguments against the § 1985(3) claim is that discrimination based on Greek ancestry cannot meet the class-based, invidious animus required by *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).[5] However, in *Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir.1985), the court reversed the dismissal of a § 1985(3) claim, specifically holding that an allegation of "racially-discriminatory animus directed against [a Latino] and other non-white citizens" was sufficient under *Scott* to satisfy the class-based animus requirement. This court sees no legally significant difference between a Latino and a Greek in this regard—if discrimination against a Latino is sufficient under

§ 1985(3) then so is discrimination against a Greek.

True, certain dicta can be read to support Township's position. In *United Brotherhood of Carpenters and Joiners Local 610 v. Scott*, 463 U.S. 825, 836, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983), the Court stated "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans." One Seventh Circuit panel has, relying on *Griffin* and *Scott*, stated that "the legislative history of § 1985(3) does not support extending the statute to include conspiracies other than those motivated by a racial, class-based animus against 'Negroes and their supporters.'" *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir.1985).

Dictum can often be "a good predictor of how the Court probably would rule if presented with the question" at hand. *Grimes v. Smith*, 585 F.Supp. 1084, 1089 (N.D.Ind.1984) (Posner, J., sitting by designation). And later decisions can sometimes undermine binding precedent to such an extent that that case need no longer be followed by a district court. *United States v. Burke*, 781 F.2d 1234, 1239 n. 2 (7th Cir.1985). But that has not happened here. In the first place, the quotation from *Grimes* seems contrary to the great weight of recent dicta. *See Hossman v. Blunk*, 784 F.2d 793, 797 (7th Cir.1986) (citing *Grimes*, court states that § 1985(3) requires "racial or class-based discrimination"); *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir.1985) (§ 1985(3) requires "racial or some other type of invidious, class-based discrimination"); *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 203 (7th Cir.1985) (listing "race, ethnic origin, sex, religion and political loyalty ... as possibly supporting a Section 1985(3) claim", quoting *D'Amato v. Wisconsin Gas*

about plaintiff's ability to act as a supervisor do not infringe his liberty. 754 F.2d at 693–94.

**5.** Although *Griffin* was a private conspiracy case and that to some extent motivated the imposi-

tion of the class-based animus requirement, class-based animus is also required in public conspiracy cases. *Munson v. Friske*, 754 F.2d 683, 694–95 & n. 8 (7th Cir.1985).

*Co.,* 760 F.2d 1474, 1486 (7th Cir.1985)); *Munson v. Friske,* 754 F.2d 683, 695 (7th Cir.1985) (same); *Bell v. City of Milwaukee,* 746 F.2d 1205, 1233 n. 31 (7th Cir.1984) (similar). But more important, *Grimes* specifically approved the holding in *Quinones,* 776 F.2d at 1366 n. 12, so it cannot possibly be read as overruling or undermining *Quinones.* Therefore, this court must follow *Quinones* and find the complaint to state a cause of action under § 1985(3).

▮ Township's other argument against the § 1985(3) claim is that the element of conspiracy is insufficiently pleaded. The Seventh Circuit has recently addressed that element as follows:

> The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement; circumstantial evidence of the conspiracy, particularly regarding the overt acts performed in furtherance of the conspiracy, is all that is ordinarily obtainable before discovery and trial. This is particularly true where, as here, much of the information regarding ... formation of the conspiracy [is] in the hands of the defendant. Therefore, in a section 1985(3) action, the complaint must simply plead sufficient facts from which a conspiracy can be inferred; the facts detailing the conspiratorial agreement can be pleaded generally, while those facts documenting the overt acts must be pleaded specifically.

*Quinones, supra,* 771 F.2d at 291. The complaint alleges that the individual defendants "acted in concert pursuant to the policy or custom of the defendant, TOWNSHIP, to discriminate against persons of Greek ancestry and particularly the plaintiff, in the area of promotions, vacations and other job considerations" (par. 11). That is a general allegation of conspiratorial agreement which *Quinones* approves. However, there are no facts from which a conspiracy can be inferred. There is no allegation that any two defendants ever acted in concert, which in *Quinones* allowed the inference that the defendants had agreed to act in that way. Nor do any of the other alleged facts give rise to an inference that defendants agreed among themselves to discriminate against plaintiff. Finally, the allegation that defendants acted pursuant to a custom and policy cannot support the conspiracy allegation. A conspiracy requires an agreement among the alleged conspirators; that each defendant independently followed the same policy handed down by some higher authority is not such an agreement. Perhaps this deficiency is correctable—indeed, it may simply be due to plaintiff's failure to allege who carried out the various acts of discrimination and how each was accomplished. At this point, however, the § 1985(3) claim must be dismissed for failure to adequately allege a conspiracy.

### IV. SECTION 1988

The complaint reads as though plaintiff is alleging a violation of 42 U.S.C. § 1988 (see par. 17) but as plaintiff concedes in his answer brief that statute does no more than allow an award of attorney's fees to a prevailing party in a civil rights action so cannot be a basis for recovery apart from the other substantive counts. Based on the understanding that plaintiff seeks only attorney's fees under § 1988, that part of Township's motion seeking to dismiss the relief sought under § 1988 is denied.

IT IS THEREFORE ORDERED that:

(1) Plaintiff's claim of a deprivation of property without due process is dismissed;

(2) Plaintiff's claim of a deprivation of liberty without due process is dismissed;

(3) Plaintiff's § 1985(3) claim is dismissed; and

(4) In all other respects the motion to dismiss is denied and defendants are ordered to answer the complaint within fourteen days of the date of this opinion.